

Signed/Docketed
February 1, 2013

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-24812 MER |
| JAMES MICHAEL RACINE ) | |
| LISA MARGARET WILLE-RACINE, ) | Chapter 13 |
| ) | |
| Debtors. ) | |

## ORDER

This matter comes before the Court on the Debtors' Motion for Post Confirmation Modification (the "Motion") and the objection of the Chapter 13 Trustee.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L) as it involves the administration of the estate and the modification of a confirmed plan.

## BACKGROUND FACTS

James Michael Racine and Lisa Margaret Wille-Racine (the "Debtors") filed a voluntary Chapter 13 petition on September 25, 2008 (the "Petition Date"). Their Amended Plan, confirmed December 2, 2008, provided for Class 4 unsecured creditors to receive $8,072, for payments of $9,387 in federal priority taxes and $2,567 in state priority taxes, and for $27,588 in payments on Class 3 secured claims collateralized by two 2003 trucks.

On April 12, 2012, the Debtors filed Amended Schedules I and J, a Modified Chapter 13 Plan (the "Modified Plan") and the instant Motion. According to the Motion, one of the Debtors' trucks was totaled in an accident, and the lien thereon was paid in full by insurance proceeds. The Debtors also seek to reduce their monthly payments from $949 per month to $500 per month. Under the Modified Plan, payments to secured claims are reduced to $24,320, and payments for priority taxes remain the same. Payments to unsecured claims are reduced to $1,758.

The Chapter 13 Trustee's objection contends the Modified Plan is not proposed in good faith. Specifically, the Chapter 13 Trustee asserts the Debtors' most recent projected expenses are not reasonable and necessary. The Trustee questions the Debtors' good faith and sincerity in offering repayment of $1,758 to unsecured creditors who have filed claims in the amount of approximately $136,000.

## DISCUSSION

Pursuant to 11 U.S.C. § 1329(a):[1] "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim. . . ." Section 1329(b)(1) further provides: "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section."

The good faith requirement for the Modified Plan disputed by the parties therefore appears in § 1325(a): "Except as provided in subsection (b), the court shall confirm a plan if— . . . (3) the plan has been proposed in good faith and not by any means forbidden by law; . . . (7) the action of the debtor in filing the petition was in good faith."

According to the Trustee, the Debtors' income and projected expenses have increased since the Petition Date. The Trustee asserts the projected expenses are not reasonable and necessary and thus demonstrate lack of good faith. The Trustee relies upon the current IRS monthly standards for food, clothing, and other expenses for a family of four, totaling $1,450, to argue the unreasonableness of the Debtors' $2,045 for such expenses. In addition, the Trustee contends the Debtors' $730 monthly daycare expense for two thirteen-year olds is excessive or unnecessary. Moreover, the Trustee asserts the Debtors' $1,022 monthly transportation expense, in addition to a vehicle payment and insurance, is unreasonable when compared to the current IRS standard of $472.

The Tenth Circuit Court of Appeals has long considered the following factors as being relevant to a determination of good faith under § 1325(a):

(1) the amount of the proposed payments and the amount of the debtor's surplus;

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;
(3) the probable or expected duration of the plan;
(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
(5) the extent of preferential treatment between classes of creditors;
(6) the extent to which secured claims are modified;
(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
(8) the existence of special circumstances such as inordinate medical expenses;
(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
(11) the burden which the plan's administration would place upon the trustee.[2]

The Court noted, "[t]his list is not exhaustive, and the weight given each factor will necessarily vary with the facts and circumstances of each case."[3]

This Court believes the *Flygare* factors and analysis are still relevant in post-BAPCPA cases.[4] In this case, it is the first and tenth Flygare factors which are at issue. Essentially, the Chapter 13 Trustee argues the Debtors' expenses unreasonably reduce the amount of payments to creditors by reducing the Debtors' monthly surplus, and indicate improper motivation and lack of sincerity in proposing the Modified Plan.

Lisa Racine is a teacher in the Douglas County Public Schools, specializing in working with students identified as "at risk." She acknowledged the Debtors' average monthly income is $8,399.[5] She further acknowledged the Debtors spend $730 per month for daycare for their two children, and $230 per month for the children's extracurricular activities.

---

[2] *Flygare v. Boulden*, 709 F.2d 1344, 1347-1348 (10th Cir. 1983) (quoting factors set forth in *In re Estus*, 695 F.2d 311, 317 (8th Cir. 1982))(quotation marks omitted).

[3] *Id.*

[4] *In re Arrigo*, 399 B.R. 700, 707 (Bankr. D. Colo. 2008).

[5] *See* Debtors' Exhibit 2, Amended Schedules I and J.

Ms. Racine testified her children have need of both day care and extracurricular sports activities, as they have been "approached about drugs." She believes they require supervision and protection, and noted sports activities require driving.  The children are involved primarily in club sports.  The Debtors' daughter was formerly involved in dance, however, such participation ceased because of the expense.[6]

In addition, she noted after one of the Debtors' vehicles was "totaled" in an accident, both she and her husband still needed transportation, so they purchased a Nissan Sentra with fifty thousand miles, with payments of $262 per month.  She also stated the Debtors are on a payment plan for a "tax problem" incurred after their bankruptcy petition.  The Debtors do not go out to restaurants, and do not take vacations.

Ms. Racine acknowledged receipt of approximately $3,500 for teaching English as a second language, but stated she used much of the money to purchase supplies for use with her at-risk students.  She also explained she is no longer a department head at her school, no longer receives "longevity pay" from the Douglas County Public Schools, and must pay union dues, which are not deducted from her paycheck.

The Debtors live in the Roxborough subdivision, and Ms. Racine stated some utility costs, particularly water, are expensive in that area.  The Debtors each commute approximately 20 miles each way to and from work, and she drives to Castle Rock approximately three times per week even when school is not in session.

Mr. Racine works for an insurance company.  He stated he needs the truck to drive to work, and noted it has 140,000 miles.  He estimates the truck needs approximately $3,500 per year in maintenance expenses.

The Court found the testimony of the Debtors to be credible and straightforward.  While the Court recognizes some of the Debtors' expenses are high, the circumstances of this case do not indicate an unreasonably high standard of living or lack of good faith.  The testimony before the Court supports a finding the Debtors' children, at least at present, require adult supervised activities and care while they are not in school and while their parents are working.  The evidence does not show the arrangements the Debtors have made for their children are unreasonable in the circumstances of this case.

Similarly, although the Debtors use their vehicles to drive relatively long distances to and from their employment, the evidence does not support a

---

[6] *See* Debtors' Exhibit 19, reflecting the cost of the club sports.

finding the Debtor's transportation costs are extravagant.  In addition, the Debtors have children attending schools near their residence, and do not drive new or luxury vehicles.  It appears impractical and unreasonable to suggest they must move closer to their jobs or obtain new jobs in order to demonstrate good faith.

Lastly, the Court finds that while certain of the Debtors' expenses exceed the IRS standards, the Debtors have provided testimony or documentation to support their stated expenses.  Accordingly, the Court finds the proposed modified plan meets the requirements of §§ 1329(a) and 1325(a).

IT IS THEREFORE ORDERED the Debtors' Motion for Post Confirmation Modification is hereby GRANTED.

Dated February 1, 2013                    BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge